# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 24-cr-277** |
| **NOUMAN SALEEM** | : | |

## <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

Nouman Saleem hired and employed Philip McPherson, after McPherson crashed two planes, and was previously fired as a flight instructor. Despite witnessing the Federal Aviation Administration ("FAA") take McPherson's pilot's certificate away, he allowed McPherson to continue to fly so that together, he and McPherson could collect $101,527.94 from unwitting flight students. After McPherson flew illegally and crashed a plane on September 28, 2022, killing his flight student, Saleem and McPherson attempted to cover up their crimes by submitting false statements to the FAA.

## I.  BACKGROUND

On March 21, 2025, defendant Nouman Saleem ("Saleem") pled guilty to Counts One, Two, and Four of the Second Superseding Indictment, charging him with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and obstruction of justice, in violation of 18 U.S.C. § 1505.

The charges arose from Saleem's involvement in a scheme with his co-defendant, Philip McPherson, II ("McPherson"), to employ and fraudulently represent McPherson as a certified flight instructor despite the fact he was not. Saleem, the owner of the flight school, ProFlite,

received authorization from the FAA in 2018 to conduct operations under Part 61 of the Federal Aviation Regulations.[1]

As a result of a safety hotline complaint made to the FAA, the FAA learned that McPherson had crashed two planes while serving as a flight instructor. Accordingly, they required McPherson to be reexamined for airman competence. During this reexamination, McPherson nearly crashed the plane he was flying. He failed the reexamination. As a result, the FAA sent an aviation safety inspector ("ASI") to meet with McPherson to take away his commercial pilot's certificate.[2] During the meeting, Saleem was present with the ASI and McPherson. Saleem was aware that McPherson had voluntarily surrendered his commercial pilot's certificate to the FAA and that he was no longer permitted to operate as a flight instructor until he possessed a commercial pilot's certificate.

Despite this knowledge, Saleem continued to employ McPherson as a flight instructor. The two men continued to schedule students for paid flight instruction with McPherson as their instructor, knowing that the worthless flight instruction would never count toward the students' total flight hours. Saleem and McPherson received a total of $ 101,527.93. Ultimately, McPherson's reckless, incompetent aeronautical skills led to the death of one of his flight students - K.K.

After the crash, in an attempt to cover up their crimes, McPherson and Saleem submitted knowingly false declarations to the FAA, stating that the ASI who had taken away McPherson's

---

1 Despite receiving authorization to serve as a Part 61 flight school, the defendant, through ProFlite, misrepresented ProFlite as a Part 141 flight school on its now-defunct website (www.profliteaero.com). This misrepresentation was material because a Part 141 flight school is certified and overseen more closely by the FAA, and has additional requirements for its operations, whereas a Part 61 flight school does not.

2 If a pilot does not physically possess a commercial pilot's certificate, his flight instructor's certificate is invalid and he may not fly with students.

commercial pilot's certificate, had advised McPherson that he could continue instructing after surrendering his commercial pilot's certificate. The ASI and Saleem later confirmed that the ASI never made this statement. Saleem admitted so under oath when he pled guilty before this Court. McPherson also admitted this fact under oath when he pled guilty.[3]

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[4] At the second step of the sentencing process, the record must demonstrate the trial court considered the 3553(a) factors, and a rote statement regarding the application of the factors will not suffice if either the defendant or prosecution properly raises a ground of recognized legal merit (provided it has a factual basis) and the court fails to address it. *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted) (abrogated in part by *Rita v. united States.*, 551 U.S. 338, 356 (2007)) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority"); *United States. v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a

---

[3] McPherson subsequently attempted to withdraw his guilty plea. This Court denied that request.

[4] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See united States. v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above. Note: "the removal of departures from the Guidelines Manual does not reflect a determination by the Commission that the rationale underlying the deleted departure provisions is no longer informative and does not serve as a limit to the information courts may consider in imposing a sentence. It is the Commission's intent that judges who would have relied upon facts previously identified as a basis for a departure will continue to have the authority to rely upon such facts, or any other relevant factors, to impose a sentence outside of the applicable guideline range as a variance under 18 U.S.C. § 3553(a)." Amendments to the Sentencing Guidelines, April 30, 2025.

sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing").

Sentencing is presently scheduled for June 11, 2026. For the reasons below, and contained in the sealed supplement, the Government respectfully requests that the Court impose a sentence of imprisonment of **24 months.**

## II.      SENTENCING CALCULATIONS

The Government agrees with the offense level computation contained in the Presentence Investigation Report ("PSR"). See PSR, at ¶¶ 38-49: the base offense level is 7, actual fraud loss increases that level by 8, the offense involved 10 or more victims so it increases by 2, it involved the violation of a previously issued regulatory order which increases it by 2, and it involved the risk of serious injury or death which increased it by another 2 levels resulting in an adjusted base offense level of 21. The defendant abused his position of trust which increased the adjusted base offense level by 2, and obstructed justice which increased the adjusted base by another 2 for a total adjusted offense level of 25. The defendant has accepted responsibility and assisted in the prosecution of his codefendant, which reduces the adjusted offense level by 3 for a final offense level of 22.

### A.      <u>Statutory Maximum Sentence.</u>

The Court may impose the following statutory maximum sentences: Count One (Conspiracy), 5 years' imprisonment, a two-year period of supervised release, a $250,000 fine, and a $100 special assessment; Count Two (Conspiracy to Commit Wire Fraud), 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment; and Count Four (Obstruction of Justice), 5 years' imprisonment, a two-year period of supervised release, a $250,000 fine, and a $100 special assessment.

Total Maximum Sentence is: 30 years' imprisonment, a three-year period of supervised release, a $750,000 fine, and a $300 special assessment. Full restitution shall be ordered. Forfeiture of any property, real or personal, that constitutes or is derived from proceeds traceable to the aforementioned violations also may be ordered.

### B.     **Sentencing Guidelines Calculation.**

The Government further agrees that the guideline imprisonment range is 41 months to 51 months. *See* PSR at ¶ 84. The Government does not have any corrections or objections.

### III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States.*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States.*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. united States.*, 564 U.S. 522, 529 (2011) (plurality opinion) (ellipsis in original)). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or

vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). Consistent with the latest guidance referenced in n. 1 above, the Government will discuss any formerly applicable Guidelines in the context of these factors.

### A.        <u>Consideration of the 3553(a) Factors Regarding Imprisonment</u>

### *Nature and Circumstances of the Offenses*

Saleem's offenses reflect a blatant disregard for the safety of his students as well as the general public for his own greed. By hiring McPherson and allowing him to fly illegally, Saleem enabled these crimes, and put others at risk every single time he made that intentional choice. He stood by, earning money, while McPherson engaged in a lengthy pattern of conduct that portended a catastrophic event – which is exactly what happened on September 28, 2022.  To compound the ramifications of his poor judgment, Saleem agreed to lie for McPherson to cover up their crimes.

### *The History and Characteristics of the Defendant*

Saleem had extensive employment history as a business owner. Following the fatal crash, Saleem immediately closed his business. He tried to rectify the breach of trust he created within his own family by moving away and starting over in a humbler position of employment. He has expressed a desire to extricate himself from the aviation business and has agreed to make the victims in this case whole. To his credit, however, Saleem admitted his faults, and unlike McPherson, has not attempted to excuse his behavior.

### *The Need to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses*

Saleem's fraudulent operation of ProFlite has had an enormous impact on the victims of these crimes. His conduct has also had a particularly serious impact on the flight community. Saleem's fraudulent operation of his flight school represents a particularly serious form of regulatory fraud that undermines critical aviation safety protections established by Congress and the FAA. The Third Circuit has recognized that aviation regulatory fraud constitutes serious criminal conduct separate from administrative violations, rejecting arguments that such fraud should be punishable only through civil penalties. *See United States. v. Stout*, 629 Fed.App'x 384 (3d Cir. 2016). Courts have consistently found that defendants who abuse positions involving aviation safety regulations create substantial risks to public. *See United States v. Saffer*, 118 F. Supp. 2d 546 (E.D. PA. 2000; *United States v. Brassington*, No. 09-cr-45 DMC, 2011 WL 3475471 (D.N.J. Aug. 9, 2011) (in finding sufficient evidence to convict the defendants of fraud involving Part 135 certificate violations and wire fraud conspiracy, the court noted the pattern of serious criminal liability for aviation regulatory violations). Saleem's misrepresentation of his Part 61 school as a Part 141 certified institution, combined with his knowing use of an uncertificated instructor, directly compromised the aviation safety framework designed to protect pilots and passengers. The tragic death of K.K. vividly demonstrates the real-world consequences of such regulatory violations.

Saleem has shown, however a respect for the law by admitting his culpability in those crimes and pleading guilty to the Second Superseding Indictment. This difficult step indicates a strong basis to begin a process of rehabilitation.

- 7 -

***Adequate Deterrence to Criminal Conduct***

Saleem's conduct in this case demonstrates an aberration from his typical judgment in the past. He does not have any prior criminal history. Additionally, to the Government's knowledge, Saleem has not engaged in any type of reckless disregard for the safety of others in the past. The Court should note that in addition to the imposition of criminal penalties, Saleem has ended his business and now serves as an office manager for his wife's medical practice. This case is, however, troubling, and resulted in the loss of life. A term of imprisonment is necessary for both specific, and general deterrence. To be clear, reckless conduct relating to aviation safety simply cannot be tolerated. A sentence of imprisonment, coupled with the severe financial penalties involved in this case, provide an adequate deterrent to ensure this conduct does not repeat itself.

***The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner***

Saleem does not need any education or vocation training; he has a college and master's degree and has significant business experience. There is also no evidence that Saleem needs any ongoing medical care or other correctional treatment given his statement to probation, although he may benefit from mental health treatment.

***The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct***

The sentence should be consistent with those imposed on similarly situated defendants. 18 U.S.C. § 3553. Aviation fraud cases resulting in death are relatively rare and require a sentence that edifies the seriousness of these offenses. For the reasons stated in this memorandum, along with the Government's sealed supplement, the Government respectfully submits that a sentence of imprisonment will avoid unwarranted sentencing disparities.

***Need to Provide Restitution for Victims***

The Court must consider restitution to the victims, including the $101,527.94 paid by flight students for lessons from an uncertificated instructor, the cost of re-taking flight lessons that count toward certification, and any additional losses suffered by the deceased student's family. 18 U.S.C. § 3553. Restitution serves both compensatory and punitive purposes and reinforces the seriousness of the defendant's conduct. The Government respectfully requests that the Court order Saleem to be responsible for restitution to the flight students in the amount of $81,997.94 – his personal share of the profits received by McPherson's illegal instruction. The Government will ask that McPherson be responsible for $19,530 in restitution to the flight students.

***Supervised Release***

Pursuant to USSG §§ 5D1.1 and 5D1.2, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The Guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3)

("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least three years is warranted. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## V.  CONCLUSION

For these reasons and subject to any that may be presented at the Defendant's sentencing hearing and in the Sealed Supplement, the Government believes that a sentence of imprisonment is appropriate in this case, followed by a period of supervised release.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Robert W. Schopf*
ROBERT W. SCHOPF
Assistant United States Attorney

*/s/ Marie L. Miller*
MARIE L. MILLER
*Special Assistant United States Attorney*

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on all counsel of

record in the Electronic Case Filing (ECF) system:

John Waldron, Esq.
Counsel for Nouman Saleem

/s/ Robert W. Schopf
ROBERT W. SCHOPF
Assistant United States Attorney

/s/ Marie L. Miller
MARIE L. MILLER
Special Assistant United States Attorney

DATED:  June 5, 2026.